GOLDFIELDS OF AMERICA, LTD., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101809.   Promulgated April 17, 1941.

*Conrad T. Hubner, Esq.*, for the petitioner.
*Arthur L. Murray, Esq.*, for the respondent.

### OPINION.

STERNHAGEN: The Commissioner determined a deficiency of $1,414.44 in income tax and $1,064.69 in excess profits tax for the year ended July 31, 1936. He disallowed deductions taken for payments made under contracts for the use and purchase of mining property. The facts are all stipulated and are so found.

The petitioner is a Nevada corporation, with its office at San Francisco, California. In 1935 it was, either directly or by assignment, party to three contracts covering mines none of which was in production in the taxable year. Under the Wittenberg contract, petitioner in the taxable year paid $18,000; under the Jumping Jack contract, it paid $4,473.16; and under the Schubert contract, it paid $2,000. In each contract, specified payments having no relation to production were required at the time of execution and shortly thereafter. In each contract, all payments made were to be applied to the fixed purchase price and were the property of the vendor immediately upon payment. The payments made under the Jumping Jack and the Schubert contracts were within the prescribed initial amounts. Under the Wittenberg contract the prescribed initial payments amounted to $5,000, and hence so much of the $18,000 paid is like the payments under the other two contracts.

Under the Wittenberg contract, the petitioner was to pay 10 percent of the gross recovery of metals "as and for royalty and in consideration of the privilege of mining said property * * * said royalty in all cases to apply on the purchase price." The petitioner agreed to pay a minimum royalty of $2,000 per month, which was likewise to apply on the purchase price. The petitioner had an

option to buy; the vendor's right to terminate the contract depended upon the petitioner's default.

The petitioner demands a deduction for the full amount paid under the contracts in the taxable year 1936. If deductible, it must be under Revenue Act of 1936, section 23 (a).[1] The payments were all in the first year of the contracts and must have been the fixed initial payments under the Jumping Jack and Schubert contracts and $5,000 under the Wittenberg contract. To this extent payments were not royalties, but were general consideration for the contract without relation to production. They impinge upon the contract throughout its entire term. They were expressly made as payments on account of the purchase price and not as annual rentals, royalties, or ordinary and necessary expenses of carrying on the trade or business. They are not deductible.

The remaining $13,000 paid under the Wittenberg contract must have been "minimum royalties" required by the contract to be paid if the prescribed 10 percent royalty was less than that amount. Since there was no production, there were no percentage royalties. The first and dominating provision of the contract is the grant to the petitioner of "a continuous and continuing option to purchase" the described mining ground and mining claims for the "purchase price of $500,000, the said purchase price to be paid as hereinafter provided." The subsequent provisions set forth the method of payment of the purchase price. All payments either of a percentage of gross recovery "as and for royalty" or of "a minimum royalty" were to be applied to the purchase price of the entire property. During the operation of the contract each payment is therefore ambiguous. It may be royalty and it may be purchase price. Whether it is one or the other must await determination when the contract is either completely fulfilled by payment of the fixed price or by default or other optional termination at the petitioner's election. During the subsistence of the contract the character of the periodic payments is indeterminate.

Deductions are limited by the language of the statute granting them. The payment of the minimum amount which by the contract is part of the purchase price can not be said to be a current expense of the taxpayer's business, for it remains part of the purchase price

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

202

until the taxpayer decides not to exercise its option to purchase or terminate the contract, *Jordan Creek Placers*, 43 B. T. A. 131; *Helser Machine & Marine Works, Inc.,* 39 B. T. A. 644. Until the contract is terminated, no one can say that the taxpayer is not taking title, or that it has no equity; and this is a necessary finding to support the deduction allowed by section 23 (a), cf. *Jefferson Gas Coal Co.* v. *Commissioner,* 52 Fed. (2d) 120; *Commissioner* v. *Jamison Coal & Coke Co.,* 67 Fed. (2d) 342. When made, the payments are primarily part of the purchase price; the possibility of their being royalties is contingent upon the petitioner's future election not to acquire the property. The conception of the contract as one of sale and purchase pervades its entire duration. *Burnet* v. *Hutchinson Coal Co.,* 64 Fed. (2d) 275, deals with minimum royalties under a lease with no provision for purchase, and therefore lacks an essential point of this controversy.

Since tax deductions by the buyer are controlled by the language of the deduction provision of the statute, there is no necessary reciprocal relation between them and the taxation to the seller of the periodic payments received by him, cf. *Rotorite Corporation* v. *Commissioner,* 117 Fed. (2d) 245; *Virginia Iron Coal & Coke Co.* v. *Commissioner,* 99 Fed. (2d) 919; certiorari denied, 307 U. S. 630; *Indian Creek Coal & Coke Co.,* 23 B. T. A. 950; *Edward E. Haverstick,* 13 B. T. A. 937.

The Commissioner properly denied the deduction claimed.

*Decision will be entered for the respondent.*